## Taylor *v.* M'Crackin.

*A.* died in possession of a tract of land, which he held by virtue of a title-bond executed by *C.* The widow of *A.* remained in possession and married *B.*, who also continued in possession. *C.*, having the legal title, brought an action of disseisin for the premises against *B.* without having previously demanded the possession.

*Held*, 1st, that though the statute gives to the widow of *A.* a right of dower in the equitable estate, her claim constituted no defence in law to the action of disseisin brought by *C.*

*Held*, 2dly, that the statutory provision,—authorising the widow to continue in possession of the mansion-house, and the messuage thereto belonging, until her dower is assigned,—applies only to the persons claiming under her deceased husband, and not to those claiming by an adverse title.

*Held*, 3dly, that though a judgment, in the action of disseisin, settles the titles held by the parties at the time of its rendition, it does not prevent the losing party from enforcing a superior title subsequently acquired, nor preclude either of the parties from applying to a Court of chancery to perfect his title, or to enjoin a judgment obtained contrary to equity.

*Held*, 4thly, that *C.* could not sustain his action of disseisin against *B.*, under the circumstances of this case, without having previously demanded of him the possession of the premises.

APPEAL from the *Hendricks* Circuit Court.

HOLMAN, J.—*William M'Crackin* commenced an action of disseisin against *Isaac Taylor*, for a tract of land in *Hendricks* county, on the 3rd of *January*, 1829. *Taylor* pleaded not guilty. He also pleaded, that *William M'Crackin*, who was possessed of the legal title to the said tract of land, bargained and sold the said land to *Robert M'Crackin*, and executed to said *Robert* a title-bond for said land. This bond is set out in the plea; is dated the 31st of *May*, 1826; is in the penalty of 1,000 dollars, conditioned for the conveyance of the said tract of land to the said *Robert*, his heirs, &c.; and is under the seal of the said *William M'Crackin*. This plea states that, at the time of executing said bond, the said *William* put the said *Robert* into peaceable possession of the said land, who continued to reside thereon until the 9th of *June* in the same year, when he departed this life, leaving *Mary M'Crackin*, his widow, in peaceable possession; that said *Mary*, being entitled to dower in the said land, continued in possession of the mansion-house, and messuage thereunto belonging, situated on the said tract of land; and that while so in possession, on the 27th of *December*, 1827, she intermarried with the said *Taylor*, who, in right of his said wife, still continues in possession of the mansion-house and messuage aforesaid, dower of the said land not having been assigned to the said *Mary*, nor to the said *Taylor*. To this plea there was a demurrer; which was correctly sustained; not only for the cause of demurrer assigned, viz. that the act of assembly authorising this action, contemplates the whole case to

May Term,
**1829.**

TAYLOR
v.
M'CRACKIN.

*Saturday,*
*May 23.*

May Term,
1829.

Taylor
v.
M'Crackin.

be tried on the issue of not guilty; but also because the subject-matter of the plea is not a legal bar to this action.

The claim by which *Robert M'Crackin*, in his life-time, held this land, was only an equitable title; and although the act of assembly provides, that the widow shall be endowed of one-third part of all the lands, whether legal or equitable, of which her husband was seized during the coverture; yet when she is endowed of an equitable estate, she receives but a title in equity, which cannot be set up at law in bar of a legal title. The act of assembly gives her a legal right to an equitable estate, but it does not convert her equitable estate into a legal one. It still remains a subject of a Court of chancery, and of which a Court of law cannot take cognizance. The provision of the act of assembly, that authorises the widow to continue in the mansion-house, and the messuage thereunto belonging, until her dower is assigned, relates only to her claim against the heirs, or those claiming the estate under her deceased husband, and does not extend to strangers or persons claiming by an adverse title. The widow, under the act of assembly, has no higher title than the husband had in his life-time. She may maintain her possession of the mansion-house, and the appurtenant messuage, until her dower is assigned, by virtue of her husband's title, whether legal or equitable, against any person who claims under the same title; but she is in no better condition to defend her possession, against an adverse or paramount title, than her husband would have been. And it will not be contended that the husband, in his life-time, could have defended his possession to these premises, by virtue of this title-bond, against the legal title set up in the declaration. If *Robert M'Crackin*, in his life-time, had a clear equity in this tract of land by virtue of this contract, he might have compelled a specific performance of the contract; and those claiming under him, have the same equitable right to have the contract specifically performed. But until there is a performance of the contract, the law can take no notice of the title to the land created thereby. *Porter's heirs* v. *Robinson*, 3 Mar. 253.

It is contended in support of this plea that, if it is not allowed, the right of dower in this case will be perpetually barred; inasmuch as the act of assembly declares, that the judgment in an action of disseisin shall be conclusive upon the parties, and

May Term, 1829.

TAYLOR
v.
M'CRACKIN.

&hall be a bar to another suit for the same cause, upon titles held by them at the time of such judgment. There is nothing here to affect this right of dower, if *Robert M'Crackin* in his life-time had an equitable title to this land. The judgment in the action of disseisin is conclusive on the parties, in the same man-ner as judgments in personal actions and in writs of right. Un-der the act of assembly, the judgment settles the controversy between the parties, about the titles held by them at the time it is rendered; but if the losing party should afterwards acquire a superior title, he is not barred by the judgment from enforc-ing that title in another action. But this clause in the act of assembly, has no bearing upon the right that either party has to *the* interposition of a Court of chancery in his behalf, in or-der to perfect his title, or to enjoin proceedings on a judgment obtained contrary to equity.

The evidence given in this case is set forth in a bill of ex-ceptions, from which it appears that *Robert M'Crackin* was the son of *William M'Crackin*, and was in possession of the land in controversy with the knowledge and consent of his father; that he improved the land, and continued in possession for seve-ral years, and until the time of his death, without the payment of rent; that his widow continued in possession, and enjoyed the land, until her intermarriage with *Taylor;* and that *Taylor* lived with his said wife on the land, and still continued to hold possession. There was no proof of notice to quit, or demand of the possession, before the commencement of this action; and the Court instructed the jury that three months' notice to quit was unnecessary. On the trial, *Taylor* offered in evidence to the jury the bond from *William M'Crackin* to *Robert M'Crac-kin*, for the conveyance of said tract of land as set forth in his plea: the execution of which bond was proved by one of the subscribing-witnesses. And although, as the bill of exceptions states, it was admitted that *Robert M'Crackin* was in possession of the land when the bond was executed, and continued in pos-session until his death, and that his widow held possession until her intermarriage with *Taylor*, and that *Taylor* ever since con-tinued in possession, yet the Circuit Court rejected the evi-dence, and would not permit the bond to go to the jury.

The plaintiff obtained a verdict for damages, on which a

judgment was rendered for the possession of the premises, and the damages assessed by the jury.

It is here contended that the judgment is erroneous, inasmuch as there was no notice to quit, nor any demand of the possession, prior to the commencement of the action. On this subject there is some uncertainty. The act of assembly authorising this action is silent on the subject of notice to quit, or demand of the possession of the disseisor, or person in possession; and the general tenor of the act of assembly, and the nature of the action of disseisin, seem to lead to the idea that no notice is necessary. But when we consider the consequences that may result to tenants in possession from this construction, we feel unwilling to admit it in its full extent. The act of assembly states that the remedy, provided by this action, shall embrace all the various remedies known to the common law for enforcing the delivery of possession or seizure of lands, &c.; but we presume it was the intention to embrace those various remedies with some degree of consistency. Although it may embrace some of the advantages of both a real and a mixed action, and be founded on the right of property as well as the right of possession; yet we cannot suppose that it can consider the defendant as a wrongdoer, and demand damages and costs against him, while resting for support upon mere right, as in a writ of right, when neither damages nor costs are recovered. At common law a disseisor was a wrongdoer; for if he was recognized as in possession as a tenant in any capacity, the action would not lie; and the action of ejectment will not lie against a tenant at will, until the will of the landlord is determined; 2 Stark. Ev. 530; and we think it inconsistent with the principles of justice, to subject a man to costs of suit, for holding lands of which he has no reason to suppose the owner wants possession. We therefore think the doctrine of notice to quit, and demand of possession, is as applicable to this action as to the action of ejectment, and we shall consider the subject accordingly.

The act of assembly, respecting the notice that is to be given to tenants for years or at will holding over, is not applicable to this case, as here is no rent reserved; nor has this case any features, that will enable us to recognize it as such a tenancy as requires notice to quit, to be given any particular length of

time before the action is brought. But as *Robert M'Crackin* was in peaceable possession, with the knowledge and consent of *William M'Crackin*, and as *Taylor* continued to hold the premises by virtue of *Robert M'Crackin's* possession, we cannot look upon *Taylor* as a wrongdoer, who is subject to an action without any notice or demand whatever. *Taylor*, as to his possession, stands in the same relation to *William M'Crackin*, that *Robert M'Crackin* did in his life-time; and it would seem contrary to the principles of justice to have subjected *Robert M'Crackin* to this action, before the possession had been demanded and refused. Here has been an unmolested possession for about five years, with the knowledge and consent of the owner of the land, which would certainly place the possessor in the condition of a tenant at will, who would not be liable to an action of ejectment, until he had received express evidence that the owner of the land had determined his will, either by a notice to quit, a demand of possession, or by some other act that would determine the tenancy. 2 Stark. Ev. 530.

Directly connected with this subject, is the title-bond for this land, that was offered in evidence and rejected. This bond was inadmissible as a bar to the action, but it was important to show in what character *Taylor* held the possession of this land; and, taking the bond as it appears on its face, in connection with the other testimony, it presents conclusive evidence that he was not in possession as a trespasser or disseisor, but that he held a possession which a Court of chancery would guaranty, by compelling a specific performance of the contract under which he claimed; and surely he had a right to show by that contract, that he was entitled to at least a demand of the possession before he could be subject to this action. In the case of *Right* v. *Beard*, 13 East, 210, the plaintiff put the defendant into possession under a contract of sale, and shortly afterwards commenced an action of ejectment against him. The plaintiff was non-suited; the Court holding that as the defendant was put in possession by virtue of a contract, he was not liable to the action until the possession was demanded. See also the same principle in the cases of *Jackson* v. *Bryan*, 1 Johns. R. 322.—*Jackson* v. *Rowan*, 9 Johns. R. 330. But if the defendants, in these cases, had been precluded from proving the contracts by virtue of which they entered, they must

34

May Term,
1829.

have been considered as wrongdoers, and compelled to pay the costs of suit, without notice to quit, or demand of possession. We think, therefore, that *Taylor* had a right to show the nature of the contract by virtue of which he was in possession; and, for this purpose, the bond should have been admitted in evidence.

*Per Curiam.*—The judgment is reversed, and the verdict set aside, with costs.   Cause remanded, &c.

*Brown* and *Hester*, for the appellant.
*Fletcher* and *Gregg*, for the appellee.